Ladies and gentlemen, good morning. We have four cases on the calendar this morning, two patent cases, and a government employee case and a veteran's case, the latter two being submitted on the briefs and therefore not being argued. And our first case is PROVERIS SCIENTIFIC v. INNOVA SYSTEMS, 2013, 1166 and 1190. Mr. Pasilnikoff. Good morning, Your Honors, if it pleases the Court. This case involves, in the first instance, a product which goes by the acronym OSA, which stands for Optical Spray Analyzer. That device was admitted to infringe prior to trial, and then the question was put to the jury about willful infringement of those claims and also infringement of other claims. Subsequent to the jury verdict, but prior to the injunction, which was entered in this case, PROVERIS, on two separate occasions, took positions and argued to the district court that limitations or language in the preamble constituted elements or limitations in the claims that, and they did that in two instances. In the first instance, they did that with respect to validity. After the verdict, PROVERIS filed a motion for judgment as a matter of law, requesting judgment that the claims were valid. In doing so, they responded to the arguments that the claims had been anticipated, and the only part of Claim 3, which is the only independent claim in question in this case, that was argued to distinguish that claim over the prior art was in the preamble. They made no mention at all in that brief about any of the language or limitations that were in the body of the claim. But this is a contempt case, right? Correct. And we're talking about colorable differences? That's one of the issues, yes, Your Honor. And why does the question of the preamble matter? Well, for the second part of the analysis, the question of whether the preamble should be read as part of the claim is a separate question. But for the colorable differences analysis, the Tebow Court has indicated that the analysis of the difference between OSA, which was infringed, and the ADSA, which is the product, which is the subject of the contempt order, whether the differences between those two devices are more than colorably different. And the Tebow Court specifically said you don't look at the differences in a vacuum. You inform your analysis of the differences based upon the representations made and the statements made in order to obtain a finding of infringement. Now, in this case, we don't have a finding of infringement because infringement was admitted. So, let me ask you, I'm struggling with this. What does this term colorably different mean? What is it? I haven't been able to find cases sort of talk around it, but I haven't been able to find anything that says, okay, colorably different means X. What do you say? How do I approach that term? What does it mean? I think it's a little bit complicated. In my simple way of thinking, to me, colorable means looking at color. It's basically not colorably different, but not more than colorably different in the context of contempt. Not more than colorably different. That's correct. In other words, if the product which is accused of contempt is more than colorably different, in other words, has a difference which is more than simply colorable, then there's no contempt. And you don't get to the infringement analysis. And then you don't even need to get to the infringement analysis. If the decision there is that it's not more than colorably different, then you still need to do the infringement analysis to find contempt. And your view is that even if we disagree with you on the colorably different, that you still are entitled to a claim construction? We're still entitled to a finding of no contempt because the claim, as properly construed and pursuant to a proper infringement analysis, is not infringed by the acts of product. And that's where the question of whether the preamble is actually a limitation in the claim comes in. And try to answer your question on colorable differences, it seems to me the Chievo Court has articulated two prongs for the colorable difference analysis. The first prong is what are the differences that you assess for whether they're colorable or not. And that prong requires you to look backwards to find what were the things that were relevant to the finding of infringement. In other words, it may not be – the difference may not be relevant if it doesn't relate to any reason that there was a finding of infringement. The unfortunate – that's the – and I'll turn to that. But the second part of colorable difference analysis as articulated by the Chievo Court is that the differences must be significant. Now you could argue that's just asking the same question in a different way. Are the differences significant? I would look at the question of – and the Chievo Court mentions what I interpret as by way of example. Chievo Court was, of course, an en banc court. Correct. Correct. So it's a strong law if you – the way I think of it. It articulates the notion that if, for example, the difference is one that's patentable, then that would go to this question of whether those differences are significant. I don't see that as being an exclusive test. I don't think it can be because in a case like this, the difference is the removal of an element and its function, which can never be patentable. So that is only one way of looking at whether the difference is significant. I would suggest that the test that's used for determining whether something is substantial, insubstantial, or not insubstantial under the doctrine of equivalence provides some guidance because, in my view, it's a similar kind of analysis. If something is not more than insubstantially different, is similar to colorably different, in my opinion, and then if you look at function, way, and result, that gives you an idea of, is the difference more than colorable? And in this case, the function is eliminated. There's a specific function required by the claim that – and that function is the requirement of obtaining the image at a predetermined instant in time. It's not disputed that the OSA device had the ability to obtain that image before the – to specify the portion of the image that was to be captured before the image was captured. It's also undisputed that that functionality was removed from the ADSA device. And that – so the claim had a functionality that was relied on to, number one, establish that the claim was valid in the JMOL motion and also to establish entitlement to the injunction. The reference was clearly made in the motion for the permanent injunction to the preamble. And in fact, the brief referred to the preamble as claim elements. So – and then went on and explained why this ability to obtain the image at a predetermined instant in time was, in fact, what the OSA product did. So if you follow, then, the TiVo court's articulated standard, you must look at the differences. And I think this is one of the places – Your user manual was the same for both products, wasn't it? Well, no, there were differences. And I think here's – that hits on the point, I think, where the district court made the error. It made an error in the form of its analysis, which resulted in an error in the result. And the error in the form of analysis was the district court did, like ProVeris does, focused on the similarities between the OSA and the ADSA. That's not what TiVo says you do. TiVo is very clear. It says the focus has to be on differences, which makes eminent sense, because the way you avoid infringement is to create a difference. So the simple fact that there were a lot of similarities between the OSA and the ADSA is not relevant. The focus – But your product brochures and your user's manual didn't emphasize differences? Those things didn't emphasize the difference. Exactly. And those things are what they are. They are user's manual and product brochures. They indicate similarity. They indicate similarity. I would posit that similarity is not relevant in this analysis. What's relevant are differences. And the differences have to flow from language of the claim. So there could be a lot of similarities that are completely untethered to the claim. No, I think you're right, which is, I think, at what point I'm having a hard time analytically, because I think at some level the two prongs of TiVo – the not colorfully different and then the infringement – sort of collapse. And maybe this is the case where that happens. Because it seems to me that the arguments you're making to establish whether there's substantial difference or whatever word we're going to use really come down to the claim construction and the infringement analysis, which here there was none at the level. Now you're pointing to other stuff in the record, but it seems a little odd to rely on that stuff with regard to colorful differences. It seems a little attenuated. Well, except I would suggest this. If you look at the touchstone for contempt is whether there's an abiding feeling that there's a – and I'm probably not paraphrasing this well – but whether there's an abiding feeling that the question of infringement shouldn't be decided. In other words, that there's a – and I have it written in my notes – but that there's a real question presented by the new device going to the question of infringement. And so you're right. In that sense, the claims are key, but in the colorable differences part, it seems to me the question here of whether the preamble is an element of the claim or not doesn't really matter. Because by the TiVo court's analysis – But by your own admission, you can't – I mean the product – if you're just looking at the products boldly, the actual differences to just any person on the street may or may not be relevant. I mean they could be substantially different, but not with respect to the issues on which the injunction was based, right? For a person on the street, I would agree. But the user of the devices will definitely know a difference. The user of the OSA device, before he captures the image, is permitted to set the predetermined time that the image will – the predetermined piece of the image that will generate the data. The user of the ADSA has no such ability. That user has to capture the image, and once the image is captured has the opportunity to select pieces of it to do the analysis. But that's a real difference because the ADSA user has no choice but to collect all the data for the spray event. If in the OSA user, that user for whatever reasons of their technical interest, they may not want to capture all that data. They may want to capture a small piece of the data, and they can do that. So as far as the user is concerned, the user of the OSA can do something that the user of the ADSA can't. Do you want to save rebuttal time? Do you want to continue or save? I would prefer to save. Maybe we'll do that. Ms. Farina? Yes. And you're splitting your time with Mr. Polk? No. I'm sorry? No, I'm just reserving a little bit of time for rebuttal. Oh, for the – no, for the cross-appeal. Yeah, rebuttal on the cross-appeal, if there is any. Okay. Ms. Farina, you're on. Before I launch into my main points, I want to answer your questions regarding what the Tevo case said. The Tevo case said, as your honors are very well aware, since it wasn't on my decision, is that the focus for the tolerable differences analysis is on, and I'm quoting, those aspects of the accused product, in this case the OSA, that were previously alleged to be a basis for the prior finding of infringement in the modified features of the newly accused product, the ATSM. In this case, admittedly, the only difference between the two products was a supposed change in some functionality that appears nowhere in either user guide, and that Inova did not, on summary judgment, submit any evidence, like an affidavit from its president, that says that that functionality was actually present in the OSA. So, in essence, what Inova is asking this court to do is assume that legal argument that says that this functionality was in place was not only actually in place, when Inova's documents don't show any evidence that it actually was, and B, that it mattered to the original infringement analysis. That premise is wrong. The original infringement analysis comes down to the fact that Inova admitted infringement based on the patent, as written, with the limitations in Claim 3, as they are now. Coming back now in trying to argue that a new limitation has to be added is, in effect, a request for a second bite at the apple. They want to turn the contempt action into a second opportunity to re-litigate invalidity, to re-litigate claim construction, since they didn't raise claim construction in the first case, and argue that that's their way out of contempt. That's not the law of the case. TIVO requires that the court take a look at what the differences are by virtue of what the claim is that was the premise for infringement. If there are no colorable differences, and colorable differences, to answer your second question, is defining the case as raising a substantial question of new infringement, I would submit. And if there is no colorable difference, then the court goes on to infringement. I agree with Your Honor that in certain cases that analysis collapses, and this case is exactly that type of case, because there are no differences between the two products, for purposes of contempt, they do, the two analysis do collapse into one, and the trial court was absolutely correct in finding, as it did, that there were no colorable differences, and in fact the adze can be treated the same way as the osa, as an infringing device that Inova was in contempt for selling. So getting to my main points here, the trial court did make two mistakes. And the first mistake was a clearly erroneous factual mistake, and that simply was that it mistook the West Tech sale as being a sale where Inova actually... Can I get it back just for a moment on the first issue? Sure. Because I guess now you're getting into your cross appeal, right? Well, not necessarily, because what we appealed on was that the West Tech gross profits should have been included in the sanction, and also that the gross profits from the India sales, the sales to Stipla, Alcman, Sun Pharmaceuticals, should also have been included, and that was an error as a matter of law for the judge ruling that a jury needs to decide what portions and what aspects of the injunction those sales fall under. Let me ask you, getting back just for a moment to what you were talking about when you opened your remarks, as I understand it, Thiebaud and the other cases say that in one of these situations you look to determine whether the differences are less than colorable. Correct? In the contempt setting between the original device found to infringe and the new device. No, I think that the Thiebaud case talks in terms of whether or not the... I apologize, I was looking for the exact language, and it's here. Did you say no more than colorable? No more than colorable. No more than colorable, exactly. Okay, and if they're no more than colorable, if they're more than colorable, then there's no contempt, correct? It means that a contempt proceeding isn't the proper place to determine infringement. Now, if they're no more than colorable, then you go to an infringement analysis, correct? Correct. So, do we go to the infringement analysis here, since you're saying that the differences are no more than colorable? Mm-hmm. Under Thiebaud, you do. However, in this particular case, because there are no differences between the ADSA and the OSA for purposes of finding contempt, meaning the colorable differences that Nova relied on have nothing to do with the basis for the original infringement, then, as Your Honor mentioned earlier, the two analyses, in essence, collapse, and there's nothing really to decide for infringement. Well, let's assume... I think you're reading a lot into my question, but it seems to me Judge Schall is absolutely right. You're not saying that you don't have to go to Step 2 if you find... So, you go to Step 2. Go to Step 2. Don't we have to then determine whether the preamble is a limitation? No, you don't. Because, particularly in this case, when you look at what happened, the preamble, as argued by Inova, has functionality, assuming that what they're saying is correct, that has nothing to do with the basis for the original infringement. The original infringement and the product that's enjoined is described in the documents that are in the injunction, the user guide, the brochure, and the price list. Nothing in those documents makes any reference whatsoever to the supposed functionality that the OSA supposedly had. Let me ask you, stepping back, just assuming for the moment there's a question, do you think, just as a matter of claim construction, that the preamble is a limitation here? No, I don't. In the record, if the court does want to entertain that question, because the trial court asked us in the May 2010 hearing, we submitted briefs on claim construction, and both sides presented their arguments, and the court rejected them. Basically speaking, if you're asking exactly the reason why, it's because the limitations stand on their own. They describe a separate apparatus that is not dependent for life or to give meaning to it from anything from the preamble. The preamble, though, has as many lines in the text as the body of the claim, which is very unusual for it not to be limited. Well, if you look at that text, everything after an apparatus for and before comprising can be removed and replaced with a lot of different types of test functionality to describe a different use for the system. So while I grant you there is a lot of text there, that text can very easily be removed and replaced with other text. Just saying the body of the claim stands on its own. Exactly, Your Honor, and the preamble cites an intended use. Let's assume we were to disagree with you. Does that issue resolve what needs to be done here? Does that necessarily mean it has to go back for claim construction or further claim construction therefore has to be done for purposes of the second prong of TIVO? It doesn't, Your Honor, because when you look at the record, the trial court actually did a claim construction and found that it was not going to read into Claim 3 a new limitation. I grant you it was a little bit of a... No, but my hypothetical was if we disagree with you and think that the preamble should be construed as limiting. Then I'm sorry... Then if we think the preamble is limiting, what happens in this case? What happens to this case? I think the judgment of contempt should stand because when you look at all the materials, claim construction is... Are you saying it's harmless error? It would be harmless error? I don't think there was any error, Your Honor. But if we disagree with you, as Judge Shrupp was saying. Okay, I guess I misunderstand you. If the question is if it had been read into the claim, does it make a difference to the finding of contempt? The answer is no, it doesn't. And it doesn't because even assuming, and this is also in our claim construction memo, even assuming that it is read in as a limitation, the ADSA system, and the OSA for that matter, still functions with that limitation and either construed the way Proveros construes it or construed the way Inova construes it. Isn't that a fact issue? I mean, it seems that if the court were to conclude that the preamble is limiting, it seems the first step is you have to construe the preamble. Right? If one agrees that the preamble is a limitation, the first thing you have to do is construe that limitation. Correct. Then you have to determine whether the ADSA reads on the claim as construed with that limitation, correct? Wouldn't that be the analysis? I don't think so. And the reason being is because we're in contempt. But the second stage of the contempt proceeding is determining whether the accused device infringes, whether the allegedly device that gives rise to the contempt infringes. Here's the difference. Because in the original case, there was no claim construction, the original case has infringement against just the two limitations that are there. So in essence, if the court goes back and construes a new limitation from the preamble into the claim, it's not an apples to apples comparison. It's in essence a brand new infringement case. And that's not what the contempt is about. Because what the contempt is, is based on the reason why the injunction was issued, is there a violation of the injunction based on... They're saying they have a different device. They're saying the ADSA is different from the... The ADSA is different from the ASO, correct? That's what they say, yes. So don't you have to determine if the ADSA infringes? If you find that there's no more than colorable differences. Well, you do have to, of course, because that's the TBO standard. Yes, you do have to find that. So why don't you just then do an infringement analysis to determine if it infringes? Well, the trial court did that, exactly that. But not with the claim... But it did it not viewing the preamble as a limitation, correct? It said the preamble isn't a limitation. Correct. If one says the preamble is a limitation, don't you then have to do the infringement analysis with the preamble being a limitation? And that hasn't been done yet. I don't think so. In TBO, the court does say that for the infringement analysis, the court should follow any claim construction that was done in the underlying case. Now, granted, there was no claim construction done in the underlying case. But that's why I'm saying... I guess they conceded infringement. Exactly. So, in essence, if all anybody has to do to get around an injunction is basically raise a new claim construction argument in a contempt action, then there is no contempt proceeding that's available. Because everybody can come up... Well, that's not true. I mean, I appreciate your point that is the suggestion that they might be getting two points. It's not true in every case. If there's a claim construction, clearly they've got to live with that claim construction. They can't raise new arguments or try to defeat that claim construction for purposes of contempt. Here, however, the difficulty is we're in an unusual situation where there was no initial claim construction. If they stipulated infringement, we don't know on what basis there was. And the court has never had to review that. Right? So we're not suggesting that in every case you get to come back and get a second bite of the apple. But this is an unusual circumstance where there was no claim construction. And ANOVA needs to live with that. ANOVA had the opportunity, if they thought in the underlying infringement trial, to raise all the claims it thought it should make based on invalidity or claim construction. And let's look at this. Their basic argument on claim construction really defaults to an invalidity argument. Because what they say is, without construing the particular language from the preamble into the claim, the claim is overbroad and therefore is anticipated by the prior art. So in essence, they're using the claim construction argument as a backdoor for another bite of the apple at invalidity. They had an opportunity in the first case to argue... Well, leaving aside invalidity, I think... I don't know what my colleagues think, but I think there may be a problem with their argument as far as validity is concerned. But on the infringement, are they really getting another bite? Because a device... They conceded a particular device infringed, right? The ASO, right? Now they're coming in, though, and saying the ADSA does not infringe, right? That's what they say, yes. And they're saying that because it doesn't meet a limitation that was never construed. And it was never construed because of a different device that they agreed to be infringed. But there's nothing in the record that says that anything in the preamble is a limitation. That's just it. They've created this argument... But isn't that the issue, whether it is a limitation? You can look in the... There seems to be a fair amount of things in the references in the patent itself that would lead you to the preamble. Go through it. I mean, there's... It just... I mean, if... If one concludes that the preamble is a limitation, should it go back for construction to the district court and for an infringement analysis? I'm sorry, could you repeat the question? If one concludes that the preamble is a limitation, should the case go back to the district court or claim construction and infringement analysis? No. And here's the reason why. At the summary judgment stage, after the trial court found there were no colorable differences, the trial court asked the parties how they wanted to proceed to determine infringement. The parties agreed the most efficient way would be by summary judgment and proceeded to present evidence regarding, from our perspective, no infringement, and ANOVA had its opportunity to counter... Excuse me, from our perspective, infringement, and ANOVA had the opportunity to counter with anything that it wanted to raise to argue no infringement and, in fact, and or, a genuine issue of material fact. ANOVA did not raise any evidence regarding that. They argued, okay, they argued claim construction. But isn't that key, though? The claim construction, if the limitation is required, don't you have to determine if the new device, the ADSA, infringes it? But they provided no evidence that... First of all, they provided absolutely no evidence that the functionality that they claimed was in the OSA was actually there. They presented no affidavit with their summary judgment. It was just attorney argument. There was nothing before the court to actually argue that there was any difference for purposes of infringement. And at the hearing, based on the summary judgment, the court asked ANOVA's counsel explicitly, what are the differences between the two devices? And the answer... Ms. Farina, two things. First of all, you've used up all your time because you've been answering questions. And you wanted to save time for a cross-appeal. If Mr. Pasilico raises points relating to the cross-appeal, I will give you two minutes for a response. If he doesn't raise anything concerning the cross-appeal, you have consumed your time. Secondly, this has nothing to do with the case. I noticed the inventor of the patent has the same last name. Is that a coincidence? It is not a coincidence, Your Honor. Thank you very much. We'll hear from Mr. Pasilico. And since Ms. Farina used more time, we'll give you five minutes for a model. Thank you, Your Honor. I'd like to address a couple of points that were raised, and perhaps the most important one, because it was repeated frequently and I think is incorrect, is that there was no evidence put in by ANOVA on the summary judgment issue regarding what the function of the OSA device is and what the function of the ADSA device is. That's not true. In fact, and we cite this in our brief on A00269 of the appendix, is the statement by Proveris of undisputed facts. And in that statement of undisputed facts, they specifically, in paragraphs six and seven, cite to the deposition of John Waters, who's the president of ANOVA, establishing very clearly that the OSA device has the ability to select images at a predetermined point in time, and the ADSA device didn't. I mean, there's no better evidence than that. In fact, the evidence was so good that Proveris has put it in its undisputed facts. And there's reference there to, and the actual testimony of Mr. Waters is also in the appendix, although it's essentially repeated in their undisputed statement of facts. So, you know, on summary judgment, remember there's summary judgment by both parties here. And so one of the questions that was asked was, you know, what would happen if there's a need to reconstrue the claims? And I would submit that, Your Honors, in this case, we're reviewing the claim, the decision here de novo, and claim construction is a question of law. So the claim construction could be done here. Now, if the court wants to send it back. Well, you used the word reconstrue the claims. I thought the position was that they have never been construed. Then I misspoke. Yeah, I think they've never been construed by the district court. We're just talking about claim three. Yes, just claim three, except to the extent that the district court said during the contempt proceeding that the preamble is not a limitation. You know, that, I guess, in effect, is a construction. So it doesn't have to go back. The question of what the claims mean is a question of law. We've briefed that. We've supplied argumentation as to why the preamble should be in. Lawrence, on its reply brief, though, I mean, in its brief, really, I guess the other side, Proveris really just relies on its briefing below, pretty much, I think. There's not a lot of argument. And wouldn't it be better, I mean, the cases seem to go both ways in terms of when you have to have a claim construed. Sometimes we've done it. Sometimes we've sent it back. And it, there's no hard and fast rule. And I would agree with that. I would suggest that it can be done here. I think everything the court needs to do the construction is there. I think it's improper to cite this big block of, you know, record below without specifics in support of a claim construction. That's not really set forth by Proveris. I mean, wouldn't it, I mean, the other thing is, I mean, you do in your claim construction, I guess, rely somewhat, Mr. Pasilko, at least on extrinsic evidence, correct? The dictionary? Correct, but that evidence was in the record below. So we're not bringing it up here for the first time it was submitted. Oh, no, I'm not suggesting that's the case. I'm just saying it's extrinsic evidence. The district court didn't really get into the construction of what the preamble meant. Correct. That is correct. Another point which I think is very important here is, we are, this is not a case where we're trying to change a result by arguing a change in claim construction. We are arguing that the claim should be construed in a certain way, but the driving force here is not the claim construction. The driving force is the change in the product. I think it's non sequitur to say that we should have argued that a product which hadn't even been designed yet at the time of trial should have been the basis for an argument of a claim construction when we admitted that the OSA device had the ability to select those images at a predetermined point in time. So it was irrelevant whether the, excuse me, it was irrelevant whether the preamble was in the claim or not because we had what was cited in the preamble. But to then say that we're not, now that we remove that feature that was in the preamble based upon the representations of Proveris that it was important for validity and it was important for infringement, to say that we can't go back and now reassess that, now that there's been a different device that doesn't have that function, we're stuck with our position on a different product is nonsensical and would be unjust. And I do want to, I did a bad job of articulating. Your time has just expired. Do you have one final thought to express? One final thought because I wanted to address a question. Not a paragraph, a sentence. Okay. The question about whether the colorable differences test merges into the infringement test, I was, what I was suggesting earlier is it doesn't always because the quote from Thievaud that I was trying to get at was that there, the question is, is there a fair amount of doubt about the wrongfulness of the conduct? And it seems to me that the colorable differences test is a little more expansive than the infringement test with respect to answering that question because if the color, I'm probably passing my sentence so I'll leave it at that, but I think that's critical to understanding that there's perhaps a difference between colorable differences and infringement. Thank you, Mr. Michelco. The case will be taken under submission. No, nothing to cross. Thank you.